# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHUCHO CRUZITO GARFIELD,<br>Defendant. | Cause No. CR 25-12-GF-BMM<br><br>**ORDER ON DEFENDANT'S MOTION TO SUPPRESS** |

## INTRODUCTION

A grand jury indicted Chucho Cruzito Garfield ("Garfield") with a single count of abusive sexual contact, in violation of 18 U.S.C. §1153(a) and §2244(a)(1). Garfield allegedly forced Jane Doe to engage in a sexual act. (Doc. 1). The assault is alleged to have occurred on or about June 14, 2022. The Indictment was returned on January 16, 2025. (*Id*.) Garfield seeks to suppress the statements from the pre-trial custodial interrogation occurring on September 2, 2022. (Doc. 16.) The Government opposes. (Doc. 20.) The Court held a hearing on April 10, 2025. (Doc. 23.)

1

## BACKGROUND

### I. Sexual Assault

Fort Peck Tribal police responded to a call of "drunk juvenile[s] attempting to [fight each other]," on June 14, 2022. (Doc. 20-1 at 1.) One of the juveniles, Jane Doe, had an active "pick up and hold" of which the police were aware. (*Id.*) The Officers put Jane Doe in restraints and interviewed her. (*Id.*) Jane Doe reported to Tribal Police that Garfield had forced her to perform oral sex on Garfield after he allegedly had abused her and threated her with a knife. (*Id.*) Jane Doe and Garfield apparently were dating at the time of the assault. (*Id.*)

Police subsequently arrested Garfield and took him into custody. (*Id.*) Police readily observed ripped clothes and signs of physical assault on Jane Doe. (*Id.*) Police conducted a follow-up interview with Jane Doe on June 15, 2022, at the Fort Peck Juvenile Detention Center. (*Id.* at 3.) Jane Doe corroborated the chain of events and reported that Garfield asked her to perform oral sex, and she did. (*Id.*) Jane Doe reported no penile penetration to her vaginal or oral areas. (*Id.*)

### II. Custodial interview

Garfield was arrested again on criminal endangerment charges on August 29, 2022. (Doc. 20-2.) FBI agent Weston Hitchcock ("Hitchcock") and Fort Peck Criminal Investigator Ken Trottier ("Trottier") interviewed Garfield four days later on September 2, 2022. (Def. Ex. 501.) Hitchcock asked Garfield whether he is

2

enrolled member of the Fort Peck Tribes. Garfield responded that he was not. (*Id*. at 00:27) Trottier asked Garfield if he could recite his social security number. Garfield responded that he cannot recite the number but noted that he keeps his social security card in his wallet. (*Id*. at 1:09.) Trottier asked about Garfield's family and to whom he is related.

Trottier proceeds to read Garfield the *Miranda* warnings to inform Garfield of his rights, including the right to counsel, the right to terminate the interview, and the right to remain silent. (*Id*. at 2:23.) Trottier explained "this is a formality, we are giving you these because you are in custody, that means we have to read you your rights. Now whether you want to talk to us or not, I am going to ask that you sign right there. This just proves, with the recorder on, that we read you your rights, that tells everybody that we did our job, you are not giving anything up, Chucho. You are not giving nothing up. I'm not trying to trick you. I'm not trying to trick you into anything." (*Id*. 3:10-3:30.) Garfield signs the waiver of rights form. (Doc. 20-3.)

The interviewers noticed that Garfield was getting emotional and visibly upset. (Def. Ex. 501 at 3:35.) The interview continued and Garfield discussed the events that occurred on June 14, 2022. Trottier says "you don't have to talk to us, you don't have to tell us shit." (*Id*. at 4:20.) Garfield responded, "but you guys are mostly here to help me right?" (*Id*. at 4:41.) Garfield continued to respond to questions and the nature of his relationship with Jane Doe. Garfield recounted that

3

Jane Doe told him that he had been hitting Jane Doe after they had been drinking. Garfield noted that he felt bad about the hitting. Garfield explained that other witnesses allegedly had told him that Jane Doe and her sister had been beating up Garfield, and Garfield "was not having any of it." (*Id.* at 9:37.) Garfield explained that Jane Doe asked him to hit her and admits that he made physical contact with her, but she overexaggerated the contact and injured herself. (*Id.* at 19:45-20:30.) Garfield explained both were intoxicated at the time. Garfield eventually admits that he threated Jane Doe with a knife and asked her to perform oral sex. Garfield denies that he raped her. Garfield does not ask to stop the interview at any point during the interview.

## LEGAL STANDARD

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." When a person is "taken into custody or deprived of freedom by the authorities in any significant way and is subjected to questioning, privilege of self-incrimination is jeopardized." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). A person "must be warned that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *Id.* at 479.

4

*Miranda* warnings ensure a person is informed of their constitutional rights. A person may waive these rights once properly advised. "A heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his rights under the Fifth Amendment." *Id*. at 475. Silence does not presume waiver of constitutional rights. *Id*. "The government has the burden by a preponderance of the evidence that [a suspect] validly waived his rights." *United States v. Johnson*, 289 F. Supp. 2d 151, 157 (D. Conn. 2003) (citing *United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir.1996); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

The interrogation must cease if a suspect indicates a desire to remain silent. *Miranda* at 474. If the suspect requests counsel, the interrogation must cease until an attorney is present. *Id.* Not all *Miranda* waivers are effective. The U.S. Supreme Court explained in *Edwards v. Arizona* that "a valid waiver of rights cannot be established by showing only that the suspect responded to further police-initiated custodial interrogation even if he has been advised of his rights. . . [A suspect who has requested an attorney] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 485 (1981). Courts recognize no "per se proscription of indefinite duration upon any further questions by a police officer on any subject, once the person in custody has

5

indicated a desire to remain silent." *Michigan v. Mosley*, 423 U.S. 96, 103 (1975).

## ANALYSIS

### I. Garfield was given adequate *Miranda* warnings.

Garfield seeks to suppress statements made during a custodial interview on September 2, 2022. (Doc. 17.) It remains undisputed for purposes of *Miranda* that Garfield was in custody. The Government argues that Garfield misplaces reliance on 18 U.S.C. § 3501. The Court agrees. The Government correctly notes the U.S. Supreme Court overruled § 3501 in *Corley v. United States*, as inconsistent with *Miranda*. *Corley* also modified the *McNabb–Mallory* rule rendering inadmissible confessions made during periods of detention that violated the prompt presentment requirement of federal criminal rule. *Corley v. United States*, 556 U.S. 303, 322 (2009).

The Court finds that the officers properly advised Garfield of his rights under *Miranda*. The officers read to Garfield verbatim, his rights under *Miranda*. *See also* Doc. 20-3. (Def. Ex. 501 at 2:23.) Those rights include all the rights against self-incrimination and protected by the Fifth Amendment of the Constitution. Rights include the right to remain silent, that any statement made may be used as evidence against him, the right to presence of an attorney, either retained or appointed. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Garfield responded in the affirmative when officers asked whether he understood the rights and proceeded to sign the

6

waiver of rights. (Def. Ex. 501 at 2:59.) Trottier explained Garfield's rights and ability to terminate the interview if he wished. The Court finds the officers properly advised Garfield of his rights. The Court analyze next whether waiver of those rights was voluntary, knowing and intelligent.

## II. Garfield made a voluntary, knowing, and intelligent waiver of his rights under *Miranda*.

Garfield seeks to suppress statements made during the custodial interview due to his apparent drug intoxication rendering him unable to exercise his free will. (Doc. 17 at 5.) Garfield cites to *United States v. Heller* to argue that the Court should consider Garfield's free will and potential drug use before the interview. 551 F.3d 1108, 1113 (9th Cir. 2009) The defendant in *Heller* ingested Tylenol III at least two hours before he came to the station to be interviewed. *Id*. Tylenol III has a combination of pain killer and codeine in it and the defendant testified that he felt "tired" and taking the medication "led [him] to make bad decisions. *Id*. at 1112. The defendant appeared "cognitively alert and able" to the officers, and the Ninth Circuit upheld the district court's decision to deny suppressing the interview. *Id*. at 1113. The same proves true here.

Garfield testified that he took fentanyl and percocet while in custody and before the interview. (Doc. 23) Garfield, although emotional, had no problem telling

his story. *See id.* Garfield's claim that he was so impaired that his "rational intellect" did not allow him to voluntarily waive his rights under *Miranda* proves unpersuasive. *See Colorado v. Connelly*, 479 U.S. 157, 16 (1986). Nothing in the record indicates that Garfield was coerced into making a confession or talking about the alleged assault.

The interviewers repeatedly explained that Garfield could terminate the interview at any time before Garfield eventually confessed. Garfield continued to discuss the alleged sexual assault and at no time indicated a desire to end the interview. Garfield showed emotion throughout the interview and stated he "felt bad" for the circumstances leading up to his arrest. Garfield nevertheless continued to discuss his relationship with Jane Doe and the circumstances surrounding the charges in the indictment. The Court finds that Garfield made a voluntary, knowing, and intelligent waiver of his rights under *Miranda*. For these reasons Garfield's motion to suppress should be denied.

Accordingly, **IT IS HEREBY ORDERED** that Garfield's Motion to Suppress (Doc. 16.) is **DENIED** in accordance with the above order**.**

**DATED** this 16th day of April, 2025.

Brian Morris, Chief District Judge
United States District Court

9